# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2058-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |           Plaintiff-Respondent, |
| |    v. |
| | Peter J. Hanson, |
| |           Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 384 Wis. 2d 413,921 N.W.2d 517
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 5, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 15, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Oconto |
|   JUDGE: | Michael T. Judge |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Ana L. Babcock* and *Babcock Law, LLC*, Green Bay. There was an oral argument by *Ana L. Babcock*.

For the plaintiff-respondent, there was a brief filed by *Scott E. Rosenow*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Scott E. Rosenow*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP2058-CR
(L.C. No. 2013CF41)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**State of Wisconsin,**

        **Plaintiff-Respondent,**

    **v.**

**Peter J. Hanson,**

        **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 5, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1  REBECCA FRANK DALLET, J.  Peter Hanson ("Hanson") seeks review of the court of appeals'[1] decision affirming the circuit court's[2] denial of his postconviction motion.

¶2  Chad McLean ("McLean") disappeared on the night of February 22, 1998.  His body was found one month later in the Pensaukee River with four gunshot wounds to his head.  The case went cold until 2009 when Hanson's estranged wife Kathy Hanson

---

[1] State v. Hanson, No. 2016AP2058-CR, unpublished slip op. (Wis. Ct. App. Sept. 18, 2018).

[2] The Honorable Michael T. Judge, of the Oconto County Circuit Court presided.

("Kathy") gave a statement to police implicating Hanson in McLean's murder. In November 2012, a judge in Oconto County held a John Doe proceeding to further investigate McLean's murder.[3] Hanson testified at that proceeding, made incriminating statements, and was subsequently charged with McLean's murder. Hanson was convicted and sentenced to life imprisonment without the possibility of parole.

¶3 Hanson challenges the admissibility at trial of portions of his testimony from the John Doe proceeding on two grounds. First, Hanson contends that the admission of his John Doe testimony regarding Kathy's statement to police inculpating him in McLean's murder violated his Sixth Amendment right to confrontation. Second, Hanson claims his trial counsel was ineffective for failing to object to the admission of his John Doe testimony because, at the time he testified, he was in

---

[3] In 2011, a John Doe proceeding was convened, Oconto County Case No. 2011-JD-3, to investigate McLean's murder. Wisconsin's John Doe proceeding, codified at Wis. Stat. § 968.26, "serves both as an inquest into the discovery of crime and as a screen to prevent 'reckless and ill-advised' prosecutions." State ex rel. Reimann v. Circuit Court for Dane Cty., 214 Wis. 2d 605, 621, 571 N.W.2d 385 (1997). "In order to commence a John Doe proceeding, the complainant, whether it be the district attorney or anyone else, must demonstrate to the John Doe judge 'that he has reason to believe that a crime has been committed within the jurisdiction.'" State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶85, 363 Wis. 2d 1, 866 N.W.2d 165 (quoted source omitted). Section 968.26 gives a John Doe judge broad powers to determine the extent of the investigation and whether the investigation should be conducted in secret. Id., ¶88.

2

custody on an unrelated matter and not read all of the Miranda warnings.[4]

¶4  We conclude that Hanson's Sixth Amendment right to confrontation was not violated because his John Doe testimony regarding Kathy's statement to police was not offered to prove the truth of the matter asserted.  We also conclude that Hanson's ineffective assistance of counsel claim fails because the law was unsettled as to whether Miranda warnings were required at John Doe proceedings.  Finally, we determine as a matter of first impression that Miranda warnings are not required at John Doe proceedings.

## I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5  On February 22, 1998, McLean and his friend Cory Byng ("Byng") went to Byng's uncle's house for a cookout.  Hanson and his friend Chuck Mlados ("Mlados") also went to the cookout, arriving in a pickup truck driven by Hanson.  At around 9:30 or 10:00 p.m., Hanson, McLean, and Mlados left Byng's uncle's house.  Hanson and Mlados alleged that they dropped McLean off at the Hi-Way Restaurant and Truck Stop on the way back to Hanson's house.  The restaurant surveillance footage from that night showed Hanson and Mlados buying beer at 9:53 p.m., but McLean was not seen in any of the footage.  At trial, six employees testified that they did not see anyone fitting McLean's description at the restaurant that night.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

¶6 Approximately one month later, McLean's body was recovered in the Pensaukee River, 1.3 miles downstream from Hanson's house. McLean had four gunshot wounds to his head. The case went cold for over a decade until 2009, when Kathy told police that Hanson had confessed to killing McLean.

¶7 In November 2012, Hanson, who was in custody at the Oconto County jail on charges unrelated to the homicide, was called as a witness to testify at a John Doe proceeding regarding McLean's murder. Prior to questioning, the John Doe judge read Hanson most, but not all, of the Miranda warnings.[5] Hanson made incriminating statements at the proceedings. In March 2013, the John Doe investigation was closed and the John Doe judge signed an order finding probable cause and authorizing the issuance of a criminal complaint.

¶8 At trial, the State introduced portions of Hanson's John Doe testimony. Hanson objected on Confrontation Clause and

---

[5] Miranda requires that "Prior to any questioning [of a person in custody], the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444. It is undisputed that the John Doe judge informed Hanson that his testimony could be used against him in the John Doe proceeding or in another legal proceeding, that he had the right to have an attorney present during his testimony, and that he could stop the questioning in order to consult an attorney. Hanson, No. 2016AP2058-CR, ¶6 n.2. It is undisputed that the John Doe judge did not advise Hanson of his right to have counsel appointed if he could not afford to hire his own counsel. Id.

4

hearsay grounds.[6] The circuit court overruled Hanson's objection and held that the testimony qualified as an admission by a party opponent pursuant to Wis. Stat. § 908.01(4)(b)1. (2017-18),[7] and therefore was not hearsay and did not violate his Sixth Amendment right to confrontation.

¶9 The jury also heard from three witnesses who testified that Hanson had confessed to killing McLean. Kenneth Hudson testified that he had been Hanson's best friend and that about a month and a half after McLean's body was found, Hanson told him that he had shot McLean and dumped his body in the river. Barry O'Connor, a friend of Hanson, testified that in 2008 Hanson told him that about ten years earlier he and Mlados had accidentally killed someone and dumped the body in a river. O'Connor also testified that Hanson told him he had confessed the murder to Kathy, but that she could not testify against him because she was now dead. Jeremy Dey testified that while he and Hanson were in the Oconto County jail together in 2013, Hanson told him that he had shot McLean and dumped his body in a river. Dey further testified that Hanson told him Kathy had given the police a statement about McLean's murder that was against Hanson's interests.

¶10 Hanson did not call any witnesses at trial and chose not to testify. Hanson argued to the jury that the case against

---

[6] Kathy died prior to the John Doe proceeding.

[7] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

him was circumstantial and that the State had failed to meet its burden to prove beyond a reasonable doubt that he had killed McLean.

¶11 During its deliberations, the jury asked the circuit court if it could review "anything that may pertain to Kathy Hanson's statement to the police." The circuit court denied this request. The jury ultimately found Hanson guilty of first-degree intentional homicide as a party to the crime and he was sentenced to life imprisonment without the possibility of parole.

¶12 Hanson filed a postconviction motion seeking a new trial based upon, among other things, the alleged ineffective assistance of his trial counsel. At the Machner[8] hearing regarding Hanson's claims, Hanson's trial counsel testified that he did not object to the admission of Hanson's John Doe testimony on Miranda grounds because he did not "believe that Miranda is applicable to a John Doe proceeding." The circuit court denied Hanson's postconviction motion, concluding that "the colloquy between Peter Hanson and the Court satisfies any right that the defendant had to an attorney at a John Doe proceeding."

¶13 Hanson appealed the denial of his postconviction motion and the circuit court's decision to overrule his objection regarding his Sixth Amendment right to confrontation.

---

[8] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Hanson raised two issues on appeal: (1) whether the circuit court improperly admitted his John Doe testimony regarding Kathy's statement to police in violation of his Sixth Amendment right to confrontation;[9] and (2) whether his trial counsel was ineffective for failing to call any potentially exculpatory witnesses[10] and for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of the Miranda warnings at the John Doe proceeding.

¶14 As to Hanson's Confrontation Clause claim, the court of appeals assumed without deciding that the circuit court's admission of Hanson's John Doe testimony was error. State v. Hanson, No. 2016AP2058-CR, unpublished slip op., ¶13 (Wis. Ct. App. Sept. 18, 2018). However, the court of appeals was "persuaded that any error in the admission of the challenged evidence was harmless because it duplicated other, unchallenged testimony." Hanson, No. 2016AP2058-CR, ¶14. Three witnesses testified that Hanson confessed to killing someone and dumping the body in a river. Two witnesses testified that Hanson confessed the killing to Kathy and one witness testified that Kathy told the police Hanson killed McLean. The court of appeals was not persuaded by the jury's request to see evidence regarding Kathy's statement to the police because the request

---

[9] Hanson did not claim a violation of his right to confrontation in his postconviction motion, but this issue was preserved for review.

[10] Hanson did not request review of this claim on appeal to this court.

7

was denied and the jury heard about Kathy's statement through other unchallenged testimony. Hanson, No. 2016AP2058-CR, ¶15.

¶15 The court of appeals also rejected Hanson's ineffective assistance of counsel claim. The court of appeals held that "[r]egardless of whether counsel was deficient for failing to object to the admission of [Hanson's John Doe] testimony on Miranda grounds, we are convinced that such error was not prejudicial to Hanson's defense." Hanson, No. 2016AP2058-CR, ¶31. Again, the court of appeals relied upon the fact that the John Doe testimony regarding Kathy's statement "merely duplicated other, unchallenged testimony." Hanson, No. 2016AP2058-CR, ¶32. Hanson then petitioned this court for review.

## II. STANDARD OF REVIEW

¶16 We review Hanson's claims that his Sixth Amendment right to confrontation was violated and that his trial counsel was ineffective. Whether a defendant's Sixth Amendment right to confrontation was violated is a "'question of constitutional law subject to independent review.'" State v. Nieves, 2017 WI 69, ¶15, 376 Wis. 2d 300, 897 N.W.2d 363 (quoted source omitted). "We generally apply United States Supreme Court precedents when interpreting" the Sixth Amendment and the analogous Article I, Section 7 of the Wisconsin Constitution. State v. Jensen, 2007 WI 26, ¶13, 299 Wis. 2d 267, 727 N.W.2d 518.

¶17 A criminal defendant is guaranteed the right to effective assistance of counsel under both the United States and Wisconsin Constitutions. U.S. Const. amends. VI, XIV; Wis.

Const. art. I, § 7; see also Strickland v. Washington, 466 U.S. 668, 686 (1984) (holding that the right to counsel includes the right to effective assistance of counsel).[11] "A claim of ineffective assistance of counsel presents a mixed question of law and fact." State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We uphold the circuit court's findings of fact involving the circumstances of the case and trial counsel's conduct and strategy unless they are clearly erroneous. State v. Pitsch, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). The final determination of whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law, which we review de novo. Id. "To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial." State v. Breitzman, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing Strickland, 466 U.S. at 687). If the defendant fails to satisfy either prong of the analysis, we need not consider the other. Id.

---

[11] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel." Wis. Const. art. I, § 7. This court has made clear that the test for ineffective assistance of counsel articulated by the United States Supreme Court applies to ineffective assistance of counsel claims under the Wisconsin Constitution. State v. Sanchez, 201 Wis. 2d 219, 235-36, 548 N.W.2d 69 (1996).

## III. ANALYSIS

¶18 We first consider Hanson's claim that his Sixth Amendment right to confrontation was violated. We then determine whether Hanson's trial counsel was ineffective for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of the Miranda warnings at the John Doe proceeding. Finally, we determine as a matter of first impression that Miranda warnings are not required at John Doe proceedings.

### A. Hanson's Sixth Amendment right to confrontation was not violated.

¶19 Hanson asserts that his Sixth Amendment right to confrontation was violated when the circuit court admitted portions of his John Doe testimony into evidence at trial. "'The Confrontation Clauses of the United States and Wisconsin Constitutions guarantee criminal defendants the right to confront witnesses against them.'" State v. Manuel, 2005 WI 75, ¶36, 281 Wis. 2d 554, 697 N.W.2d 811 (quoted source omitted). In Crawford, the United States Supreme Court observed that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)). Therefore, a crucial aspect of the Sixth Amendment right to confrontation, pursuant to Crawford, is that it "only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'" United States v.

10

Tolliver, 454 F.3d 660, 666 (7th Cir. 2006). It is well established that "out-of-court statements may be offered to prove innumerable relevant propositions apart from the truth of any matters (explicitly [or] implicitly[]) asserted." 7 Daniel D. Blinka, _Wisconsin Practice Series: Wisconsin Evidence_ § 801.302 at 768 (4th ed. 2017); _see_ _State v. Medrano_, 84 Wis. 2d 11, 19-20, 267 N.W.2d 586 (1978) (reasoning that the testimony was properly admitted "because it was not offered for the truth of the statement"); _Caccitolo v. State_, 69 Wis. 2d 102, 107, 230 N.W.2d 139 (1975) ("the hearsay rule is inapplicable to out-of-court assertions . . . if the statement is not offered to prove the truth of the matter asserted.")

¶20 Our first inquiry, pursuant to _Crawford_, is to determine whether the testimony is hearsay. The following relevant testimony was read to the jury:

SPECIAL PROSECUTOR: Did you ever talk to your wife Kathy about Chad McLean's death?

THE DEFENDANT: Well, of course. We talked about it a lot.

SPECIAL PROSECUTOR: Okay. And at times Kathy confronted you and said you were responsible for Chad McLean's death?

THE DEFENDANT: No. She didn't do that until she was trying to put me away before she died.

SPECIAL PROSECUTOR: Okay. But regardless of the timing, at some point Kathy Hanson confronted you and said you were responsible for Chad McLean's death?

THE DEFENDANT: Not to my face she didn't. She went to the police.

11

SPECIAL PROSECUTOR: At some point within the year before she passed away, isn't it a fact that Kathy confronted you about the Chad McLean death?

THE DEFENDANT: No. She never——we didn't talk about it anymore. It wasn't until she kept trying to put me in jail for little stuff through my probation officer that then all the sudden she went to the police and accused me of——that she thought that I killed Chad McLean.

SPECIAL PROSECUTOR: But specifically she was telling people that you had shot Chad McLean?

THE DEFENDANT: Well, not that I know of.

SPECIAL PROSECUTOR: Well——

THE DEFENDANT: She told the police.

SPECIAL PROSECUTOR: Who told you that she was saying that you killed Chad McLean?

THE DEFENDANT: [Detective Darren] Laskowski.

....

SPECIAL PROSECUTOR: Question, have you ever told anybody that her dying was the best thing that ever happened to you?

THE DEFENDANT: Yeah.

SPECIAL PROSECUTOR: How many people have you told that to?

THE DEFENDANT: A couple.

¶21 Hanson's John Doe testimony presents three layers of out-of-court statements: (1) Hanson's statement made at the John Doe proceeding about what Detective Laskowski told him; (2) Detective Laskowski's statement to Hanson about what Kathy told him; and (3) Kathy's statement to Detective Laskowski that

12

Hanson killed McLean.[12]  The first layer is not at issue because the parties ultimately agree that Hanson's statement was an admission by a party opponent, pursuant to Wis. Stat. § 908.01(4)(b)1., and not hearsay.

¶22  The State asserts that Detective Laskowski's statement to Hanson forms the basis for the State's introduction of Hanson's John Doe testimony.  The State argues that Detective Laskowski's statement to Hanson, the second layer, was not offered for the truth of the matter asserted, but to show Hanson's consciousness of guilt.  If we accept the State's argument that Detective Laskowski's statement is not hearsay, the same argument applies to the third layer, Kathy's statement to Detective Laskowski.

¶23 According to the State, Detective Laskowski's statement was not offered for the truth of whether Kathy actually told Detective Laskowski that Hanson killed McLean; but, rather, to show Hanson's belief that Kathy would testify against him.  Taken together with Hanson's statement that Kathy's death was the "best thing that ever happened" to him, the State claims there is an inference that Hanson was glad

---

[12] The circuit court allowed this excerpt of the John Doe proceeding into testimony based on its conclusion that it qualified as an admission by a party opponent, pursuant to Wis. Stat. § 908.01(4)(b)1.  The parties now agree that the second and third layer of out-of-court statements were not admissible under § 908.01(4)(b)1.

13

Kathy was dead so she could not testify that he killed McLean.[13] Detective Laskowski's statement regarding what Kathy told him was thus offered to prove Hanson's consciousness of guilt and was not hearsay, as it is irrelevant whether Kathy actually made a statement to Detective Laskowski.

¶24 Hanson asserts that because there is no overt link between his statement that Kathy's death was the best thing that ever happened to him and his knowledge that Kathy made a statement to Detective Laskowski, the State's assertion of consciousness of guilt is too attenuated. Hanson gives a number of other reasons why he made the statement about Kathy's death, including that he believed that Kathy had an affair and that she was reporting "little stuff" to his probation officer in an attempt to put him in jail. Hanson contends that the State's purported use of the testimony surrounding Kathy's statement to police was just a "ruse" to put Kathy's unconfronted testimonial statement before the jury.

¶25 A mere claim that a statement is not offered for its truth is not enough to overcome a hearsay challenge to its admissibility. "When the State proffers a statement for a nonhearsay purpose, close attention should be paid to the relevancy of, and need for, this use of the evidence." Blinka, _supra_, § 802.302 at 828. The question is not whether the

---

[13] The State further points to the fact that the jury heard testimony about Hanson's confession to Kathy from multiple witnesses which Hanson did not object to on appeal.

14

evidence might be inadmissible hearsay if it is offered to prove the truth of the matter asserted; rather, the question is whether the evidence is offered for a legitimate reason other than for the truth of the matter asserted. See United States v. Friedman, 445 F.2d 1076, 1081 (9th Cir. 1971) (observing that "[r]elevant testimony relating an out-of-court conversation is admissible as evidence of consciousness of guilt, even though it might be inadmissible hearsay if used to prove the truth of the facts asserted"); see also United States v. Shorter, 54 F.3d 1248, 1260 (7th Cir. 1995); Zipf v. American Tel. and Tel. Co., 799 F.2d 889, 895 (3d Cir. 1986); United States v. Hackett, 638 F.2d 1179, 1186-87 (9th Cir. 1980) (maintaining that the defendant's statements "were admitted not for their truth, but merely for the fact that the statements were made," which implied the defendant's consciousness of guilt.).

¶26 A jury could infer that Hanson said that Kathy's death was the best thing that ever happened to him because he had heard from Detective Laskowski that she might be a witness against him in McLean's murder. We accept the State's proffered purpose for Detective Laskowski's statement and conclude that it was not offered to prove the truth of the matter asserted. The same rationale applies to the third layer, Kathy's statement to Detective Laskowski, since whether Kathy actually told Detective Laskowski that Hanson confessed to her is discrete from Hanson's belief that she would testify against him. There is therefore a legitimate nonhearsay purpose for the admission of Hanson's John Doe testimony that is relevant to the charge against Hanson for

15

McLean's murder: consciousness of guilt. "[W]hen the State offers a statement for a proper nonhearsay purpose . . . it is neither hearsay (evidence law) nor testimonial hearsay (confrontation law)." Blinka, supra, § 802.302 at 828.

¶27 We conclude that Hanson's Sixth Amendment right to confrontation was not violated because his John Doe testimony was offered to demonstrate consciousness of guilt and was not offered to prove the truth of the matter asserted. Because the Confrontation Clause does not apply to nonhearsay statements, Hanson's Sixth Amendment right to confrontation was not violated.[14]

### B. Hanson's ineffective assistance of counsel claim fails because the law was unsettled as to whether Miranda warnings were required at John Doe proceedings.

¶28 Hanson asserts that his trial counsel was deficient for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of the Miranda warnings. To establish that counsel's performance was deficient, the defendant must show that the performance fell below "an objective standard of reasonableness." See Thiel, 264 Wis. 2d 571, ¶19. In order to constitute deficient performance, the law must be settled in the area in which trial counsel was allegedly ineffective. See Breitzman, 378 Wis. 2d 431, ¶49 (quoted source omitted) ("'[F]ailure to raise arguments that

---

[14] Because we decide the statement was not hearsay, we need not decide whether the statement was testimonial, the next step in an analysis under Crawford v. Washington, 541 U.S. 36 (2004).

require the resolution of unsettled legal questions generally does not render a lawyer's services outside the wide range of professionally competent assistance sufficient to satisfy the Sixth Amendment.'"). "'[I]neffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue.'" State v. Maloney, 2005 WI 74, ¶29, 281 Wis. 2d 595, 698 N.W.2d 583 (quoted source omitted).

¶29 In his brief, Hanson "acknowledges that there is no binding authority requiring that all witnesses at a John Doe hearing be read Miranda warnings before being questioned." Hanson is correct that the law was unsettled. Accordingly, trial counsel's failure to object to the introduction of Hanson's John Doe testimony on the grounds that he was not read all of the Miranda warnings at the John Doe proceeding cannot constitute deficient performance. We conclude that because Hanson is unable to succeed under the first prong of the ineffective assistance of counsel analysis, deficient performance, we need not consider the second prong, prejudice. Breitzman, 378 Wis. 2d 431, ¶37. Therefore, Hanson's ineffective assistance of counsel claim fails.

C. Miranda warnings are not required at John Doe proceedings.

¶30 Whether Miranda warnings are required at John Doe proceedings is a matter of first impression. We begin our analysis with the language and application of Miranda v. Arizona, 384 U.S. 436 (1966). Under Miranda, any statement made

17

by a person in custody in response to interrogation by law enforcement officers must be suppressed if he or she has not been properly informed of their rights. "Custodial interrogation" set forth in <u>Miranda</u>, and reaffirmed in <u>Oregon v. Mathiason</u>, 429 U.S. 492, 494 (1977), is defined as follows: "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Therefore, if questioning was not "initiated by law enforcement," or the person was not "in custody," <u>Miranda</u> warnings are not required.

¶31 Because of the similarities between grand jury and John Doe proceedings,[15] case law analyzing <u>Miranda</u>'s application to grand jury proceedings is instructive. In <u>United States v. Mandujano</u>, 425 U.S. 564, 566 (1976), a plurality of the United States Supreme Court held that <u>Miranda</u> warnings are not required for grand jury witnesses. The <u>Mandujano</u> Court explained that <u>Miranda</u> "simply did not perceive judicial inquiries and custodial interrogation as equivalents," as "the compulsion to

---

[15] <u>See</u> Legislative Reference Bureau, <u>Wisconsin Briefs 15-7: Grand Jury and John Doe Proceedings in Wisconsin</u> (Mar. 2015) ("Both grand jury and John Doe proceedings are independent inquiries into whether a criminal complaint should be issued in response to allegations of wrongdoing."). Nevertheless, it is undisputed that John Doe proceedings "afford substantially more protection to a potential accused than does a grand jury." <u>State v. Doe,</u> 78 Wis. 2d 161, 165, 254 N.W.2d 210 (1977); <u>see also</u> <u>State v. Washington</u>, 83 Wis. 2d 808, 819, 266 N.W.2d 597 (1978) (reasoning that a "John Doe is of a more restricted scope than a grand jury, limited basically to the subject matter of the complaint upon which the John Doe is commenced").

18

speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." Id. at 579 (quoting Miranda, 384 U.S. at 461.) The Court further emphasized that Miranda addressed "extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards," which is distinguishable from the grand jury context. Mandujano, 425 U.S. at 579. Extending Miranda warnings to a grand jury witness "is an extravagant expansion never remotely contemplated by this Court in Miranda," according to the Mandujano Court. Id. at 579-80.

¶32 In cases since Mandujano, the United States Supreme Court has suggested that Miranda warnings are not required to be read to grand jury witnesses prior to questioning. In United States v. Washington, 431 U.S. 181, 186 (1977), the Court noted that it had never held that Miranda applied to grand jury proceedings.[16] In Minnesota v. Murphy, 465 U.S. 420, 430, the Court held that a defendant did not need to be read Miranda warnings prior to speaking to his probation officer because he "was not 'in custody' for purposes of receiving Miranda protection." The Murphy Court repeatedly compared the

---

[16] The Washington Court declined to resolve this issue because the defendant was read Miranda warnings before testifying at a grand jury proceeding. United States v. Washington, 431 U.S. 181, 186 (1977).

19

defendant's situation to a subpoenaed witness at a trial or grand jury proceeding. Id. at 427, 431-32.

¶33 Relying on Mandujano, Washington, and Murphy, federal courts of appeals have also concluded that Miranda warnings are not required for grand jury witnesses. See, e.g., United States v. Williston, 862 F.3d 1023, 1032 (10th Cir. 2017) (cert. denied, 138 S. Ct. 436 (2017)); United States v. Myers, 123 F.3d 350, 360-62 (6th Cir. 1997); United States v. Gillespie, 974 F.2d 796, 802-05 (7th Cir. 1992) (reasoning that the United States Supreme Court "has explicitly distinguished the custodial nature of police interrogations from the grand jury context"); United States v. Pacheco-Ortiz, 889 F.2d 301, 307 (1st Cir. 1989); Conley v. United States, 708 F.2d 1455, 1458 (9th Cir. 1983); United States v. Prior, 546 F.2d 1254, 1257 (5th Cir. 1977). As the Tenth Circuit aptly explained: "a full-Miranda-warning requirement would run counter to the Supreme Court's direction that grand-jury witnesses are not in custody while testifying, and that grand-jury questioning is not interrogation." Williston, 862 F.3d at 1032.

¶34 As in grand jury proceedings, a witness at a John Doe proceeding is not subject to custodial police interrogation. A John Doe proceeding is convened by a judge for the purpose of determining if a crime has been committed. See Wis. Stat. § 968.26(2)(b); see also State v. Washington, 83 Wis. 2d 808, 824, 266 N.W.2d 597 (1978) (emphasizing that a John Doe judge must "conduct himself as a neutral and detached magistrate in determining probable cause."). While a district attorney often

20

questions John Doe witnesses, this court has long recognized that the proceedings "are constantly under the scrutiny of a judge," who "does <u>not</u> act as 'chief investigator' or as a mere arm of the prosecutor." <u>State ex rel. Two Unnamed Petitioners v. Peterson</u>, 2015 WI 85, ¶86, 363 Wis. 2d 1, 866 N.W.2d 165 (quoted source omitted) (emphasis in original). Along with the statutory requirements of § 968.26, guidance for the John Doe judge is also given in the Wisconsin Judicial Benchbook and scripted material to address a witness is set forth in Special Materials 12 of the Wisconsin Criminal Jury Instructions. <u>See</u> Wis. Judicial Benchbook CR-48 (6th ed. 2019); Wis JI——Criminal SM-12 (2011). [17]

---

[17] For example, Special Materials 12 recommends that a John Doe judge address a witness using the following prompts:

"If you believe that a truthful answer to any question asked of you would incriminate you, that is, subject you to criminal prosecution, you may refuse to answer the question on the grounds that it may incriminate you. Do you understand that?"

"Do you understand that your answers to questions put to you may be used against you by this John Doe or in another legal proceeding?"

. . . .

"You are also advised that you have the right to have an attorney present with you during your testimony. . . ."

Wis JI——Criminal SM-12 (2011).

(continued)

¶35 Moreover, even if a witness at a John Doe proceeding is in custody relating to other charges at the time of the proceeding, they would not be compelled to confess for "fear of reprisal . . . or in the hope of more lenient treatment," as is the fear with custodial police interrogation and a "police-dominated atmosphere." See Illinois v. Perkins, 496 U.S. 292, 296-97 (1990). As the United States Supreme Court recently clarified, "service of a term of imprisonment, without more, is not enough to constitute Miranda custody," as "standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation." Howes v. Fields, 565 U.S. 499, 512 (2012). A witness at a John Doe proceeding is not subject to custodial interrogation and therefore Miranda warnings are not required. Although we do not require Miranda warnings be given at John Doe proceedings, we recommend a John Doe judge address a witness in accordance with Special Materials 12.

---

The Wisconsin Judicial Benchbook also encourages the John Doe judge to advise a witness on the record of their right against self-incrimination, that their testimony may be used to support issuance of a warrant, and that they have the right to consult an attorney before answering questions. See Wis. Judicial Benchbook CR-48 (6th ed. 2019).

We note that the John Doe judge here read the script set forth in SM 12 almost verbatim.

22

IV. CONCLUSION

¶36 We conclude that Hanson's Sixth Amendment right to confrontation was not violated because his John Doe testimony regarding Kathy's statement to police was not offered to prove the truth of the matter asserted. We also conclude that Hanson's ineffective assistance of counsel claim fails because the law was unsettled as to whether <u>Miranda</u> warnings were required at John Doe proceedings. Finally, we determine as a matter of first impression that <u>Miranda</u> warnings are not required at John Doe proceedings.

*By the Court.*—The decision of the court of appeals is affirmed.

¶37 SHIRLEY S. ABRAHAMSON, J. withdrew from participation.