COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1810-CR**

Cir. Ct. No.  **2017CF111**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

TOBY J. VANDENBERG,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Door County:  DAVID L. WEBER, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1     SEIDL, J.   Toby Vandenberg appeals a judgment, entered upon his no-contest plea, convicting him of seventh-offense operating a motor vehicle while intoxicated (OWI) and an order denying his motion for postconviction relief.

Vandenberg claims that his trial attorney provided ineffective assistance at his sentencing hearing, and he therefore seeks resentencing.

¶2    Vandenberg contends that his trial attorney performed deficiently at his sentencing hearing by: (1) arguing for the imposition of an illegal sentence; and (2) failing to meaningfully advocate for Vandenberg. He further contends that because his attorney's deficient performance was tantamount to a complete denial of counsel, we should apply a presumption of prejudice to his ineffective assistance claim. In the alternative, he argues that even if prejudice is not presumed, there is a reasonable probability that the result of his sentencing hearing would have been different had he received the effective assistance of counsel at that hearing.

¶3    We conclude that Vandenberg's trial counsel did not perform deficiently. In reaching this conclusion, we recognize that a portion of Vandenberg's trial attorney's sentencing argument—when viewed in isolation—was arguably unreasonable insomuch as counsel requested that the circuit court place Vandenberg on probation.[1]    When considering the totality of the circumstances surrounding counsel's argument, however—namely, the fact that counsel framed his argument as seeking an extension of the law and alternatively argued that the court impose the minimum three-year initial confinement period mandated by existing law—we conclude that counsel's overall performance was

---

[1] Such a disposition is undisputedly prohibited for a defendant convicted of seventh-offense OWI under WIS. STAT. § 346.65(2)(am)6. (2017-18) and *State v. Williams*, 2014 WI 64, 355 Wis. 2d 581, 852 N.W.2d 467.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

reasonable. In addition, we determine that counsel's decision not to focus on Vandenberg's good character and positive social history was not an abdication of counsel's role at sentencing; rather, it was a reasonable strategic decision.

¶4 We further conclude that, even assuming Vandenberg's trial attorney performed deficiently, Vandenberg was not prejudiced by that deficient performance. With respect to Vandenberg's argument that we should presume prejudice in this case, we determine that the circumstances of this case do not amount to a complete denial of counsel and therefore such a presumption is not warranted here. And, finally, we determine that Vandenberg has failed to demonstrate that there is a reasonable probability that the result of his sentencing hearing would have been different but for his attorney's assumed deficient performance. Accordingly, we affirm.

## BACKGROUND

¶5 According to the criminal complaint, at approximately 11:10 a.m. on June 6, 2017, Door County dispatch received a citizen's telephone call reporting a vehicle being driven recklessly. The caller provided a license plate number for the vehicle in question, and law enforcement located and stopped that vehicle. Vandenberg was identified as the driver, and a subsequent blood draw showed his blood alcohol concentration was .265.

¶6 As a result of this incident, Vandenberg was charged with seventh-offense OWI, seventh-offense operating a motor vehicle with a prohibited alcohol concentration (PAC), and operating a motor vehicle while revoked. The State and Vandenberg reached a global plea agreement to resolve these charges,

3

along with four additional counts and a citation that were pending against Vandenberg in two separate cases.[2] As pertinent here, the terms of the plea agreement were that Vandenberg would plead no contest to the seventh-offense OWI charge and, in exchange, the State would request that the circuit court dismiss the PAC and refusal charges outright and dismiss and read in all remaining charges. The State also agreed to cap its sentencing recommendation at eight years' imprisonment, consisting of four years' initial confinement and four years' extended supervision.

¶7 After accepting Vandenberg's plea, the circuit court ordered a presentence investigation report (PSI) and scheduled the matter for sentencing on March 5, 2018. On that date, however, the court informed the parties that it had just received the PSI but had not yet reviewed its contents. Consequently, because the court did not "feel comfortable" proceeding with sentencing until it had reviewed the PSI, it rescheduled the sentencing hearing for March 9, 2018.

¶8 It is undisputed that the PSI contained information that portrayed Vandenberg in a positive light. For example, the PSI detailed that Vandenberg had a stable employment history, a strong relationship with his father, and in general appeared to be a "good person when he is sober." The PSI also explained that Vandenberg's longtime girlfriend had been diagnosed with pancreatic cancer in May of 2017, and that her diagnosis and eventual death caused Vandenberg to turn to alcohol as a coping mechanism.

---

[2] Specifically, there was one count of operating while revoked and three counts of felony bail jumping pending against Vandenberg in Door County case No. 2017CF130, and a pending citation against him for refusing to take a test for intoxication after arrest in Door County case No. 2017TR950.

¶9     At the outset of the rescheduled hearing the circuit court informed the parties that it had "now read [the PSI] in detail." After the State recommended a sentence in accordance with the parties' plea agreement, Vandenberg's trial attorney, Brett Reetz, began his sentencing argument by acknowledging that "[t]his is a difficult case to argue." Reetz then stated that "under the current law there's strong argument there's a mandatory minimum of three years' incarceration …. But for that I would argue that probation would be appropriate in this case." Reetz explained that probation, as opposed to incarceration, would be appropriate because previous periods of incarceration had failed to rehabilitate Vandenberg and "the definition of insanity is doing the same thing over and over again."

¶10     Again, however, Reetz reiterated that "I know you're bound by the law, Your Honor, and if to the extent that the law prevails I'd ask for the three years rather than four years." Nonetheless, Reetz continued to advance his probation argument:

> [T]o the extent you want to be bold, a probation period and impose and stay the entire thing with the lengthy, lengthy period of revocation, six, eight years of ES, if he would violate probation.
>
> It's something new, it hasn't really been tried to that extent, and what hasn't been tried is this huge anvil hanging over his head. Huge, articulated anvil hanging over his head of that much.
>
> But notwithstanding, I understand the State's position, but it really is just doing the same thing over and over again, and if history repeats itself[,] it's just delaying the inevitable, which will have more consequences. So I'm of the position that it would be preferable to try something novel. But it's up to you, Your Honor.

At this, the circuit court interjected, and the following discussion took place:

> THE COURT: You would acknowledge that I'm not able to put Mr. Vandenberg on probation?
>
> MR. REETZ: I would acknowledge that there's significant case law that says you're not able to.
>
> THE COURT: So are you saying there's a distinction between withholding sentence and putting him on probation and imposing a sentence and staying it?
>
> MR. REETZ: I'm making that argument.

¶11 The circuit court ultimately adopted the State's sentencing recommendation. In rejecting Reetz's request for an imposed and stayed sentence, the court stated it was unaware of "any authority for your proposition that I can essentially, if not literally, put this man on probation. That I can stay this sentence, and somehow attach it to conditions. I think—I know of no authority for that."

¶12 Vandenberg filed a postconviction motion for resentencing, claiming that he received ineffective assistance from his counsel at the sentencing hearing. In support of his claim, he asserted that Reetz "was deficient because (1) he argued for an illegal sentence and (2) he failed to meaningfully advocate for his client." He further asserted that he "was prejudiced by these deficiencies."

¶13 The circuit court held a ***Machner***[3] hearing on Vandenberg's motion. At the hearing, before the court heard any testimony, Vandenberg argued that because Reetz "did not fulfill any of the role" expected of counsel at sentencing, "the adversary system that is required for the functioning of the justice system

---

[3] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

really broke down in this case." Therefore, Vandenberg argued that the court should apply a presumption that Reetz's performance was both deficient and prejudicial.

¶14 The circuit court rejected Vandenberg's per se deficiency and prejudice arguments for two reasons. First, it determined that the premise of Vandenberg's argument that Reetz failed to meaningfully advocate for him at sentencing was flawed. The court explained that although Vandenberg faulted Reetz for not highlighting the "mitigating things in the PSI," the court had told "both counsel that I'd read the PSI." Thus, the court stated Reetz did not need to "necessarily recite" those mitigating factors as part of his sentencing argument. And, second, the court determined that Reetz's argument that the court could place Vandenberg on probation was an "alternative position" to Reetz's main argument "for a minimum sentence of three years."

¶15 Reetz then testified, first explaining his rationale for arguing that the circuit court place Vandenberg on probation. He stated that "this case dealt with serious addictions" and that he knew, from personal experience, that "this particular Court" was "receptive to arguments related to addiction." As such, he decided to seek a "sort of an extraordinary, meaning extra ordinary, sort of activist decision in this particular case." He clarified that although he knew his probation argument was "pushing the law," he did not "think it was a ridiculous, insane argument." In all, he explained that "[m]y hope and desire, my intent was to get probation somehow. But the fallback was, the thrust of the argument was, don't give me this, give me the three years."

¶16 Regarding his failure to focus on certain portions of the PSI that portrayed Vandenberg in a positive light, Reetz testified:

7

> My view is an attorney who comes in and starts sugarcoating the facts and the defendant based upon their—apparently their need to contradict the State's position loses credibility. And it's a dishonest approach. And it's not an effective approach either.
>
> My—strategically I routinely acknowledge the weak points of the case or the facts of the case. I also believe that sentencing arguments are much more effectively addressed through rehabilitation ….
>
> So in cases like this, to come in here and say no big deal, it's been a lot of years, all that, I think would destroy credibility. And I think—I know for a fact that when you do that oftentimes the rest of what you say is ignored.

¶17 The circuit court denied Vandenberg's motion in an oral decision. The court determined that Reetz did not perform deficiently in any respect and that, even assuming he had, Vandenberg had not shown that he was prejudiced by any assumed deficiency. Vandenberg now appeals, raising the same ineffective assistance of counsel arguments as in his postconviction motion.

## STANDARD OF REVIEW

¶18 A claim of ineffective assistance of counsel presents a mixed question of law and fact. *State v. Hanson*, 2019 WI 63, ¶17, 387 Wis. 2d 233, 928 N.W.2d 607. We uphold the circuit court's findings of fact involving the circumstances of the case and defense counsel's conduct and strategy unless they are clearly erroneous. *Id.* The final determination of whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel, however, is a question of law which we review de novo. *Id.*

## DISCUSSION

¶19 A criminal defendant is guaranteed the right to effective assistance of counsel under both the United States and Wisconsin Constitutions.

8

U.S. CONST. amends. VI, XIV; WIS. CONST. art. I, § 7. To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both of these prongs if a defendant fails to make a sufficient showing on either prong. *Id.* at 697. In this case, however, we choose to address both prongs.

## I. Deficient performance

¶20 To demonstrate deficient performance, a defendant must show that, under the totality of the circumstances, his or her trial counsel's representation fell below an objective standard of reasonableness. *State v. Dillard*, 2014 WI 123, ¶88, 358 Wis. 2d 543, 859 N.W.2d 44. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. Accordingly, we are highly deferential to counsel's strategic decisions and will make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In other words, we will not "second-guess" counsel when he or she pursues a reasonable strategy. *Id.*

¶21 As indicated, Vandenberg contends that Reetz performed deficiently at his sentencing hearing by: (1) arguing for the imposition of an illegal sentence; and (2) failing to meaningfully advocate for Vandenberg. We address, and reject, each contention in turn.

*A. Probation argument*

¶22    Vandenberg, citing WIS. STAT. § 346.65(2)(am)6. and *State v. Williams*, 2014 WI 64, 355 Wis. 2d 581, 852 N.W.2d 467, asserts that "probation was never an option [in this case] and the [circuit] court had no choice but to sentence [him] to at least three years initial confinement." Therefore, because Reetz testified at the *Machner* hearing that he believed there was a "sliver of a window" that would allow the court to place Vandenberg on probation, he contends that Reetz's "request for probation was based on an incorrect interpretation of law and is therefore deficient as a matter of law."

¶23    The State does not refute Vandenberg's contention that probation was never an option in this case. To the contrary, it acknowledges that the *Williams* majority explicitly rejected the interpretation of WIS. STAT. § 346.65(2)(am)6. advanced by Reetz at sentencing. *See Williams*, 355 Wis. 2d 581, ¶¶37-38. Nevertheless, the State argues that Reetz's sentencing argument was not deficient because he researched the law and reasonably (albeit wrongly) concluded there was room for argument on the issue.

¶24    We disagree with the State to the extent it argues that if defense counsel makes a good faith effort to interpret the law, but errs in doing so, that counsel's conduct can be viewed as reasonable. Indeed, the misinterpretation of settled law that is directly applicable to the issue an attorney is researching is arguably objectively unreasonable. *See State v. Thiel*, 2003 WI 111, ¶30, 264 Wis. 2d 571, 665 N.W.2d 305.

¶25    Still, as referenced above, our inquiry into whether a defendant has satisfied his burden to prove deficient performance must consider the "totality of the circumstances." *See Dillard*, 358 Wis. 2d 543, ¶88. And, with that principle

in mind, we agree with the State that Vandenberg cannot show that Reetz's overall sentencing argument was deficient because Vandenberg "ignores the context and tone" of that argument.

¶26 To explain, at the sentencing hearing, Reetz acknowledged that "significant case law" precluded the circuit court from placing Vandenberg on probation. Reetz also requested that "to the extent the law prevails," the court impose the minimum three-year period of initial confinement, as opposed to the four years recommended by the State. By framing his argument in that manner, Reetz made clear that he was seeking the imposition of the statutory mandatory minimum period of confinement, or, alternatively, that Vandenberg be placed on probation.

¶27 On appeal, Vandenberg ignores the former aspect of Reetz's argument. In doing so, he tacitly asks us to ignore the totality of the circumstances surrounding Reetz's sentencing argument. Because we may not do so, we conclude that Reetz's probation argument, while arguably unreasonable standing alone, did not render Reetz's entire sentencing argument deficient.

¶28 Instead, Reetz's probation argument was—as he put it at the *Machner* hearing—a "swing-for-the-fence argument" that he hoped would, at worst, cause the circuit court to "split the baby" and impose the mandatory minimum period of confinement. Although the court ultimately did not do so, Reetz's strategy was not lost on the court, as it stated at the postconviction hearing that, "I felt like he was arguing for three years, and then he—the only way he could take a position that was more lenient than that was to somehow argue, you know, probation." As such, we cannot say that Reetz pursued an overall strategy

at sentencing that deprived Vandenberg of his constitutional right to the effective assistance of counsel.

### B. *Meaningful advocacy*

¶29    Vandenberg next asserts that Reetz's "failure to inform the [circuit] court about [Vandenberg's] good character and positive social history in any meaningful way or present any 'relevant mitigating argument legitimately available' constitutes deficient performance." In support, he states that there were many favorable points and mitigating factors available to Reetz, including: (1) the PSI's recommendation that the circuit court sentence Vandenberg to three years' initial confinement; (2) the death of his longtime girlfriend as a tragic event causing Vandenberg's relapse; (3) the seven-year gap between Vandenberg's sixth and seventh OWI offenses; and (4) Vandenberg's steady employment history.

¶30    Vandenberg also faults Reetz for "highlight[ing] significantly negative features" of his history. Namely, Vandenberg points to the fact that Reetz emphasized to the circuit court that Vandenberg had a history of trying, and failing, to curb his alcoholism when Reetz stated that "we've tried everything. He's been to prison, he's been to counseling, he's been to treatment in prison, he's been on extended supervision. It fails over and over and over." Finally, Vandenberg points to Reetz's statement that Vandenberg's drunken driving could have caused an "awful type of tragedy" as effectively aligning Reetz's argument with that of the State.

¶31    The State responds that each of the decisions Vandenberg faults Reetz for making were, in fact, the result of a reasonable strategy and therefore not deficient. We agree.

¶32    Reetz made clear at the *Machner* hearing that his overarching strategy at sentencing was driven by his familiarity with the circuit court. Based upon that familiarity, he believed that the court would be "receptive to arguments related to addiction." Accordingly, he chose to avoid "sugarcoating" the bad facts of the case by emphasizing the positive aspects of the PSI and to instead focus on Vandenberg's struggle with his disease. More specifically, he tried to argue that Vandenberg's struggle with alcoholism needed to be treated in a manner that it had not been treated previously—i.e., in an intensive rehabilitation program outside of prison. In other words, Reetz pursued an argument that he believed— based upon his personal experience with the sentencing court—would result in the minimum period of confinement.

¶33    We conclude that such a strategic decision fell within the wide range of reasonable professional assistance—especially in light of the fact that the court began the sentencing hearing by informing the parties that, after rescheduling the original sentencing hearing so that it could review the PSI, it had now read that report "in detail." Once that fact was established, Reetz made an informed decision to tailor his argument to those factors that he believed would give Vandenberg the best chance of receiving the shortest possible sentence. Because we must "eliminate the distorting effects of hindsight" and "evaluate [counsel's] conduct from [his or her] perspective at the time," of sentencing, we will not second-guess Reetz's reasonable decision to do so.

## II. Prejudice

¶34    Typically, when analyzing the prejudice prong of a defendant's ineffective assistance claim, we apply the familiar *Strickland* test. *See State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). That is, we "evaluate

whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *See* **State v. Sholar**, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (citing **Strickland**, 466 U.S. at 694).

¶35 In "rare" instances, however, we presume that counsel's deficient performance is prejudicial. **Erickson**, 227 Wis. 2d at 770. Our supreme court has identified three categories of such instances:

> (1) "when the effective assistance of counsel has been eviscerated by forces unrelated to the actual performance of the defendant's attorney," such as when counsel is denied entirely during critical stages in judicial proceedings; (2) when the circumstances are such that even a competent attorney could not provide effective assistance, such as when the state or the court interferes with counsel's representation; and (3) when the attorney engages in egregious conduct far outside the bounds of effective assistance such as providing representation under a conflict of interest or failing to present known evidence that calls into question the defendant's competency to stand trial.

**State v. Pinno**, 2014 WI 74, ¶83, 356 Wis. 2d 106, 850 N.W.2d 207 (citing **Erickson**, 227 Wis. 2d at 769-71).

¶36 Here, Vandenberg argues that Reetz's performance at sentencing fell within the third category of cases. Relying on **United States v. Cronic**, 466 U.S. 648, 659 (1984), he argues that Reetz's conduct was egregious because it was tantamount to a complete denial of counsel, such that the adversarial process broke down at his sentencing hearing. Stated differently, he argues that Reetz "abdicated his duty to his client" and essentially became an advocate for the State. Vandenberg further contends that the "rationale for presuming prejudice" that our

supreme court articulated in *State v. Smith*, 207 Wis. 2d 258, 280, 558 N.W.2d 379 (1997), "applies here with equal force."

¶37    We are not persuaded.  To begin, for the reasons explained above, we conclude that Reetz did not abandon his duty to meaningfully advocate for Vandenberg at sentencing.  Instead, he pursued a reasonable strategy informed by his familiarity with the circuit court and the sentencing factors that he believed were most likely to influence the court when it made its sentencing decision.  We therefore cannot conclude that Reetz's conduct was tantamount to the complete denial of counsel that is necessary to bring a case within the ambit of *Cronic* and *Erickson*.

¶38    Moreover, we agree with the State that the *Smith* court's rationale for presuming prejudice undercuts, rather than supports, Vandenberg's argument.  In *Smith*, the State and Smith reached a plea agreement that included the prosecutor's promise to refrain from providing a specific sentencing recommendation.  *Id.* at 272.  Nonetheless, at sentencing, the prosecutor recommended a sentence and Smith's counsel failed to object.  *Id.* at 272-73.  The *Smith* court decided that applying a presumption of prejudice was warranted because "when a negotiated plea rests in any significant degree on a promise or agreement of the prosecutor, such promise must be fulfilled."  *Id.* at 281.  In other words, the court based its decision to apply a presumption of prejudice based on the fact that defense counsel's deficient performance allowed the bad-faith actions of the State to go unchecked.

¶39    No similar concern is present in this case.  Although the State's sentencing recommendation differed from Reetz's sentencing request, there was no agreement that prevented such a result.  In fact, the parties' different sentencing

positions evinced exactly what Vandenberg now contends was missing at his sentencing hearing: his counsel and the State taking adversarial sentencing positions. Consequently, we conclude that this is not one of the "rare" instances where applying a presumption of prejudice is warranted, and we therefore proceed to analyze Vandenberg's prejudice claim under the *Strickland* test.

¶40 Again, that test requires that Vandenberg demonstrate that, absent Reetz's alleged errors, there is a reasonable probability that the result of this sentencing proceeding would have been different. *See Sholar*, 381 Wis. 2d 560, ¶33. We conclude Vandenberg has not met this burden.

¶41 In denying Vandenberg's postconviction motion, the circuit court explained that it had "been presented with no facts which tells me today, you know, jeez, if I had known that back on, you know, March 9th of 2018, I would have imposed a three-year sentence rather th[a]n a four." The court continued:

> I guess the argument is if Mr. Reetz [could have] called Mr. Vandenberg's employer or maybe some other folks in his life [to show his positive attributes], but I feel like I knew that. I feel like I knew that he was a good worker. If I had heard from his employer that he was a good worker, I don't think that would have added to my analysis of this case. I—that was baked into the cake as far as I was concerned. I knew that. I knew that he had strong personal attributes. He's caring. He's—you know, he loves his father, for example. Or at least I infer that he does, because he stays in touch with his dad.
>
> If I heard anything more about that I don't think it would have changed anything about my decision. My basic decision was, number one, I needed to protect the public. And I—and we all knew that Mr. Vandenberg had spent time in prison on his fifth and sixth. We all knew that as well. And Mr. Reetz was making this argument that, you know, this hasn't worked in the past, so we need to try something new.
>
> But when you look at the protection of the public, which I hold to be the most important thing, there was just no way

that Mr. Vandenberg was not going to go to prison for a significant period of time, for no other reason than to protect the public.[4]

¶42    On appeal, Vandenberg largely ignores this portion of the circuit court's reasoning and instead leans on his view of Reetz's advocacy as having "failed to offer a counter to the bleak portrait painted by the state." The State responds that, "[h]ere, the facts were the facts, and there is no indication that the court's view of those facts would have possibly shifted in Vandenberg's favor had his attorney ignored the seriousness of the offense and Vandenberg's prior conduct." The State further argues that "[i]f anything, counsel made his rehabilitation argument all the more credible by establishing that Vandenberg was not going to minimize his actions."

¶43    We agree with the State's position. The record clearly establishes that the circuit court had before it all the information Vandenberg now faults Reetz

---

[4] In Vandenberg's brief-in-chief, he presents a cursory argument—in a footnote—that the circuit court's comments at the *Machner* hearing "suggested [that the circuit court] prejudged Mr. Vandenberg." Citing *State v. Gudgeon*, 2006 WI App 143, ¶31, 295 Wis. 2d 189, 720 N.W.2d 114, he argues that this "structural error" alone entitles him to resentencing. The State does not respond to Vandenberg's prejudgment argument, nor does Vandenberg's reply brief revisit his argument.

Although we may deem unrefuted arguments conceded, we decline to do so here for two reasons. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). First, we deem the argument inadequately briefed. *See State v. Santana-Lopez*, 2000 WI App 122, ¶6 n.4, 237 Wis. 2d 332, 613 N.W.2d 918 (we need not "consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review"). Second, the thrust of Vandenberg's undeveloped argument appears to be that if a circuit court begins a sentencing hearing with a general disposition in mind, then the court has per se prejudged the issue. We reject such a harsh rule, as we perceive nothing improper about a circuit court beginning a sentencing hearing with a general disposition in mind and then listening to and considering all the arguments presented to it at sentencing before following the proper sentencing procedures to arrive at a final disposition. *See State v. Gallion*, 2004 WI 42, ¶¶23-24, 270 Wis. 2d 535, 678 N.W.2d 197. Nothing in the record suggests that the circuit court failed to follow these procedures here.

for not focusing on at sentencing. As the court aptly explained at the *Machner* hearing, it considered that information but ultimately decided that Vandenberg's negative behavior and the particular facts of this case justified the sentence it imposed.[5] As such, we conclude Vandenberg has failed to demonstrate that it is reasonably probable the result of his sentencing would have differed absent Reetz's alleged errors. Vandenberg therefore cannot prove prejudice under the *Strickland* test.

    *By the Court.*—Judgment and order affirmed.

    Not recommended for publication in the official reports.

---

[5] We note that Vandenberg does not present a developed argument explaining why it would be reasonably probable that his sentence would have been different but for Reetz's other alleged error—i.e., Reetz's argument that the circuit court could place Vandenberg on probation. In any event, such an argument would be without merit, as the court found at the *Machner* hearing that it "understood" Reetz's "number one position" to be "advocating for three years" of initial confinement, and Vandenberg does not contend that this finding was clearly erroneous. Vandenberg therefore cannot show it is reasonably probable that the result of the sentencing hearing would have been different had Reetz not made his probation argument, because the court actually considered, and rejected, the alternative argument that three years' initial confinement, as opposed to four, was warranted. *See State v. Sholar*, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89.