COURT OF APPEALS
DECISION
DATED AND FILED

March 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2005-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2013CF118**

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GARLAND DEAN BARNES,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Garland Barnes appeals a judgment of conviction, entered upon a jury's verdict, for delivery of greater than fifty grams of

methamphetamine and an order denying his motion for postconviction relief. Barnes asserts he is entitled to dismissal of the criminal complaint or, alternatively, to a new trial based on the State's failure to disclose certain materials during discovery, violations of a pretrial order regarding evidence of prior transactions between Barnes and the police informant, and a bevy of alleged evidentiary errors. For the same reasons, he argues he received ineffective assistance of counsel and requests that we exercise our power of discretionary reversal in the interests of justice. We reject Barnes' arguments and affirm.

## BACKGROUND

¶2 Barnes was charged with delivering greater than fifty grams of methamphetamine. The crime occurred during a controlled drug transaction using a confidential informant, Charles Marciniak, who was a former drug user and admitted criminal. Marciniak set up the transaction through several recorded telephone calls to Barnes. Police then outfitted Marciniak with a body wire, provided him with documented buy funds and sent him to the buy location, a bar parking lot.

¶3 Marciniak testified that he and Barnes parked their vehicles so that their driver's-side doors were facing one another. Marciniak threw the bag of buy money into Barnes' vehicle, Barnes threw the methamphetamine into Marciniak's vehicle, and then they went their separate ways. Officers were arriving at the scene just as the transaction was taking place, and there was no surveillance video of the exchange. Barnes and his girlfriend, Bobbi Reed, were apprehended in Barnes' vehicle after a brief chase, and the buy funds were located in the center console. Reed was found with several grams of methamphetamine and heroin

pills in her possession. A short time later, police reunited with Marciniak at an area motel and recovered methamphetamine from a box in his vehicle.

¶4 A jury convicted Barnes following a two-day trial, and he was sentenced to thirty years' imprisonment, consisting of fifteen years' initial confinement and fifteen years' extended supervision. Prior to his sentencing, Barnes filed a motion for a new trial. After sentencing, he filed a motion for postconviction relief. The motions alleged many of the same grounds, and collectively they asserted that the circuit court should have dismissed the criminal complaint as a sanction for discovery violations committed by the State. Alternatively, Barnes sought a new trial based on the State's alleged discovery violations, its alleged violations of an in limine order, and numerous allegedly prejudicial evidentiary errors. He also asserted that his trial attorney was constitutionally ineffective for failing to object to the errors. Finally, Barnes asserted that the cumulative effect of all the errors prevented the real controversy from being fully tried, warranting a reversal in the interests of justice.

¶5 The circuit court denied the motions. Although the court found discovery violations had occurred, it concluded that dismissal was not warranted as a sanction. The court reasoned that the recording of the drug transaction the State had failed to disclose was not exculpatory. Moreover, its absence had been used strategically by Barnes' trial counsel to bolster the defense case, which was that the police work on the case had been extremely shoddy and that Marciniak had actually sold methamphetamine to Barnes or Reed. Regarding the violation of the in limine order, the court found that Marciniak's mentioning during trial other drug transactions involving Barnes was an "innocuous reference" to past conduct and therefore not prejudicial. Finally, the court rejected Barnes' arguments regarding the alleged evidentiary errors, reasoning that Barnes' assertions were

3

either non-meritorious or there had been only harmless error. The court determined that the cumulative effect of any errors did not warrant a new trial, nor did Barnes receive constitutionally ineffective representation from his trial attorney. Barnes now appeals. Additional facts will be set forth in the discussion section as necessary.

## DISCUSSION

*I. Dismissal or New Trial for Discovery Violations*

¶6      Barnes argues that the charge against him should have been dismissed or, alternatively, that he is entitled to a new trial as a result of the State's "numerous discovery violations and misrepresentations throughout this case." The circuit court thrice chastised the State for discovery violations, and, in two instances, imposed sanctions for the violations.

¶7      First, in response to a motion to exclude Marciniak as a witness based on the State's failure to disclose any promises, rewards or inducement he had been given for his assistance, the circuit court concluded the State should have identified such information "a year ago or more." The court declined to exclude Marciniak's testimony, however, preferring instead to fashion a jury instruction if the defense requested it.

¶8      Second, Barnes filed a pretrial motion to exclude officer Duane Clauer's testimony based upon the State's failures to disclose him as a witness and to provide his reports until days before trial. The circuit court concluded there had

been an "egregious" discovery violation under WIS. STAT. § 971.23 (2019-20),[1] and it excluded Clauer's testimony as a sanction.

¶9    Still, Barnes primarily focuses on a third alleged discovery violation regarding the contents of a wire audio recording made during the drug transaction. He argues this violation included not only a failure to disclose the recording itself, but also "numerous lies and misrepresentations" by State actors. Specifically, Barnes argues the prosecutor's representation in the State's discovery disclosures that Barnes' trial attorney had been given access to the police recording in April 2014 was false. Barnes also notes that both the prosecutor and police sergeant Paul Winterscheidt, who had made the recording, had stated repeatedly that there were no audible voices in the recording, only background noise. Winterscheidt's representation occurred during his cross-examination testimony at trial.

¶10    Following Winterscheidt's testimony, another officer was asked at trial about the lack of any voices on the wire recording, and he testified that, in fact, "[t]here were words on the recording" and that he could hear Marciniak's voice. The circuit court addressed this revelation at the end of the day's testimony and outside the presence of the jury, ordering the State to immediately disclose any audio recording from the wire. The next day, a third officer testified as follows about the wire recording: "There were voices on there, yes. The informant certainly and another person you can vaguely hear." Defense counsel repeatedly elicited the third officer's testimony that Winterscheidt's testimony the previous day had been false.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶11    On appeal, as to the alleged third discovery violation, Barnes first advances a due process claim under ***Brady v. Maryland***, 373 U.S. 83 (1963).  For a defendant to prevail on a ***Brady*** claim, he or she must show three things:  (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence was material.  ***State v. Wayerski***, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468; *see also* ***Brady***, 373 U.S. at 87. Materiality is measured by the same standard as prejudice in the ineffective assistance of counsel context—namely, whether there was a reasonable probability that the suppressed evidence would have produced a different verdict.  ***Wayerski***, 385 Wis. 2d 344, ¶36.  We accept the circuit court's findings of historical fact unless they are clearly erroneous, but we independently determine whether a due process violation has occurred.  ***Id.***, ¶35.

¶12    The State argues no ***Brady*** violation occurred because the existence of the recording was disclosed well in advance of Barnes' trial, even though the prosecution erroneously believed the recording did not contain voices.  We do not address this argument because, even assuming the evidence was suppressed by the State, Barnes has not shown the recording constituted evidence that was favorable to his defense or that it was material.

¶13    Specifically, Barnes argues the contents of the recording are "generally" favorable "because there is significant ambiguity in the discussion, with no clear indication of who is buying from whom."  After trial, Barnes had the audio of the transaction enhanced, and it includes him and Marciniak "exchanging general pleasantries, before one male asks, 'How much dough?' and another makes a statement along the lines of[,] 'We're good on that other one, right?'" Barnes argues that the jury could draw an inference in his favor that Marciniak had

6

bought from Barnes, insomuch as the enhanced recording "fails to refute the theory of defense." Moreover, Barnes claims the recording was material because it contradicted Winterscheidt's and Marciniak's testimony and created "ambiguity in the transaction."

¶14     It is precisely this ambiguity that informs our conclusion that the recording was not favorable to Barnes. Barnes does not argue the contents of the recording directly supported his innocence; rather, the best he can argue is that the recording's contents were not inconsistent with his theory of defense. But when a fact finder might reasonably draw an inference of either guilt or innocence from an item of evidence, that evidence cannot be said to "make the difference between conviction and acquittal," and it is therefore not favorable to the accused. *State v. Harris*, 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).[2]

¶15     To the extent Barnes argues that the contents of the recording were valuable as impeachment evidence, he accomplished his impeachment objectives at trial. Barnes was able to effectively impugn Winterscheidt's credibility, both during the testimony of other officers and when he recalled Winterscheidt, who admitted that his testimony the previous day about the recording's contents was "inaccurate" (or "false," to use the nomenclature of the defense question). Additionally, the record does not support Barnes' claim that the contents of the

---

[2] Moreover, as the State notes, defense counsel was able to use the existence of the recording to impeach Winterscheidt without having the contents admitted into evidence, which would have risked that the jury would have been able to discern the identities of the persons speaking. Depending on which individual the jury associated with a particular voice, presenting the recording at trial could have eroded the defense theory that Marciniak had sold drugs to Barnes, not vice versa.

recording impeached Marciniak himself. Marciniak testified after the defense became aware of the voices on the recording, and his testimony was that he could not recall one way or the other whether he and Barnes spoke to each other during the transaction.[3] Under these circumstances, we cannot conclude the contents of the recording were either favorable to Barnes or material, even assuming they were suppressed by the State.

¶16 Barnes further argues that even if the nondisclosure regarding the wire audio recording did not violate ***Brady***, a new trial is nonetheless required under Wisconsin's criminal discovery statute, WIS. STAT. § 971.23(1). Again, the State argues that it complied with the discovery statute because it disclosed the recording.[4] Assuming without deciding that the State failed to meet its disclosure obligations, Barnes has not demonstrated prejudice arising from that failure. The remedy for a discovery violation under § 971.23 is the exclusion of any witnesses or evidence not disclosed. *See* § 971.23(7m).

¶17 Here, the recording was not used at trial, and Barnes was able to nonetheless impeach one of the State's primary witnesses with the fact that he had testified inaccurately about the contents of the recording. Because the recording's contents were not used, there is no basis for us to conclude that a new trial is warranted. "A [discovery] violation is harmless when there is no 'reasonable

---

[3] Barnes takes significant liberties with Marciniak's testimony by claiming Marciniak "apparently said no words were exchanged." That was not Marciniak's testimony; he was quite clear that he could not remember whether he and Barnes said anything to one another, despite defense counsel's attempts to guide him toward testifying that he and Barnes had spoken during the transaction.

[4] Whatever the merit of this assertion—a matter we need not and do not reach—at a minimum, it fails to account for the State's repeated incorrect representation that no voices could be heard on the recording—a representation on which defense counsel apparently relied.

possibility' that the violation contributed to the conviction." *State v. Rice*, 2008 WI App 10, ¶19, 307 Wis. 2d 335, 743 N.W.2d 517 (2007) (citation omitted).

¶18    Finally, Barnes asserts the circuit court erred by refusing to grant a new trial as a sanction for the totality of the discovery violations committed by the State. "[T]he imposition of a sanction for a discovery violation is addressed to the discretion of the trial court." *State v. Martinez*, 166 Wis. 2d 250, 259, 479 N.W.2d 224 (Ct. App. 1991). A circuit court properly exercises its discretion when it "examine[s] the relevant facts, applie[s] a proper standard of law, use[s] a demonstrated rational process, and reache[s] a conclusion that a reasonable judge could reach." *State v. Walters*, 2004 WI 18, ¶14, 269 Wis. 2d 142, 675 N.W.2d 778.

¶19    We conclude the circuit court did not erroneously exercise its discretion here. Although the court stated that the State's conduct was "disturbing," it noted that the wire recording was not exculpatory, and it preferred to view the matter as one of a witness testifying falsely. Accordingly, the court stated it would permit additional cross-examination and entertain a jury instruction on the issue of the wire recording's contents. Given the other discovery violations, the court stated it was "open … [to] limiting some of the [S]tate's evidence," and it ultimately did so, granting the defense's sanction request to exclude Reed as a witness.

¶20    In calibrating that sanction, the circuit court stated that it no longer viewed a jury instruction as sufficient given the numerous discovery violations "compound[ed] … together." The court reasoned the State needed to be punished above the exclusion of Clauer's testimony, and it found that Reed was a "key … witness" for the State, although not so much that her exclusion would "gut" the

State's case.  The court found that this exclusion was an "adequate remedy" and that dismissal was not warranted.  In short, the court based its remedy on the facts and the law, and it reached a reasoned and reasonable determination that we will not overturn on appeal.

## II. *Alleged Violation of In Limine Ruling*

¶21     Next, Barnes argues that the circuit court erred by refusing to grant a mistrial for Marciniak's violations of the court's in limine ruling.  The court granted Barnes' unopposed pretrial motion to exclude "[a]ny mention of 'other acts' evidence pertaining to previous drug transactions" between Marciniak and Barnes.  The court stated such material was "not going to come in, and the [S]tate will certainly talk to their witness about not mentioning any prior drug transactions between the two."

¶22     Nonetheless, Marciniak made several allusions during his testimony to prior drug transactions with Barnes.  During his direct testimony, he stated that he knew to meet Barnes in the bar parking lot because "that's where we always met."  Marciniak also testified as follows, in response to a question about what he did after Barnes threw the box into his vehicle:  "We just usually go our separate ways and that's what we did that day."  During cross-examination, in the course of testifying that he could not recall whether he and Barnes had a conversation during the relevant exchange, Marciniak stated, "There usually wasn't any other meeting when we met so I'm going to say probably not."  He additionally testified on cross-examination "that's where we met before and usually just threw each other's stuff into the vehicle," and he further stated he believed that is what occurred in this instance "because that's what had happened in the past."

¶23   Barnes also challenges certain of the prosecutor's comments during opening and closing arguments as violating the order.  He contends the jury could reasonably infer from the prosecutor's statement during opening arguments that Marciniak knew he could get methamphetamine from Barnes and that Barnes had previously sold to Marciniak.  Moreover, Barnes asserts the prosecutor's references during closing arguments to Barnes being a "bigger supplier" constituted "an indirect reference to prior deliveries."

¶24   Based on the foregoing statements, Barnes made an oral motion for a mistrial on the second day of trial.  The circuit court denied the motion but stated it was willing to entertain a request for a cautionary instruction.  Barnes subsequently raised the issue again in his postconviction motions.

¶25   Whether to grant a mistrial is a decision that lies within the circuit court's discretion.  *State v. Doss*, 2008 WI 93, ¶69, 312 Wis. 2d 570, 754 N.W.2d 150.  "The circuit court 'must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial.  The denial of a motion for mistrial will be reversed only on a clear showing of an erroneous use of discretion' by the circuit court."  *Id.* (quoting *State v. Ross*, 2003 WI App 27, ¶47, 260 Wis. 2d 291, 659 N.W.2d 122).  A circuit court properly exercises its discretion when it reaches a reasoned conclusion based upon an application of the proper legal standard to the relevant facts.  *State v. Bunch*, 191 Wis. 2d 501, 506-07, 529 N.W.2d 923 (Ct. App. 1995).

¶26   We cannot conclude the circuit court erroneously exercised its discretion based upon these facts.  The court explicitly contemplated that a curative jury instruction would be sufficient to mitigate Barnes' concerns about any prejudice.  Barnes does not contradict the State's assertion that he never

requested a curative instruction. The court's directive in this respect was consistent with the principle that "[s]ound discretion includes considering alternatives such as a curative jury instruction." *State v. Moeck*, 2005 WI 57, ¶72, 280 Wis. 2d 277, 695 N.W.2d 783.

¶27 At the postconviction hearing, the circuit court again stated that a mistrial was not warranted. The court determined that the references to prior drug transactions were "innocuous" in the context of the entire body of evidence. Specifically, the jury likely would have inferred that Marciniak and Barnes had prior dealings based upon the information Marciniak provided to police and his efforts to set up the drug transaction at issue. The court essentially identified the testimony as background information, in which Marciniak was "explaining the situation." The challenged testimony did not concern the nature of the prior drug transactions, their frequency, or when they occurred—for all the jury knew, the transactions could have taken place years ago. The court explained reasonably well why it did not view the testimony as prejudicial. To the extent Barnes argues he was prejudiced by the prosecutor's opening and closing statements, the jury was properly instructed that the attorneys' arguments were not evidence.

¶28 Barnes' final argument regarding the "other acts evidence" is that the circuit court erroneously exercised its discretion because it applied the wrong legal standard. When addressing Barnes' various motions, the court occasionally used the phrase "manifest injustice." Again, the proper test for determining whether a mistrial is warranted is whether the claimed error was "sufficiently prejudicial to warrant a new trial." *Doss*, 312 Wis. 2d 570, ¶69. Although the court used the wrong nomenclature, we do not perceive it to have been applying a materially different test. It is evident the court was assessing the prejudicial effect of the evidence in the context of the entire trial. Although Barnes obviously

disagrees with the court's assessment of prejudice, the court reached a reasonable determination based on the facts and law, one that we will not second guess on appeal.

*III. Evidentiary Rulings*

¶29    Barnes next challenges several of the circuit court's evidentiary rulings.   We review a decision to admit or exclude evidence at trial for an erroneous exercise of discretion.  *See **Martindale v. Ripp***, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.   On appeal, we do not decide whether we would have made the same decision as the circuit court but, rather, we focus on whether the circuit court's discretionary determination was made in accordance with accepted legal standards and with the facts of record.  *Id.*, ¶29.

¶30    Even if we conclude the circuit court erred, the defendant is not automatically entitled to a new trial.  Both WIS. STAT. §§ 805.18(2) and 901.03(1) prohibit this court from reversing a judgment based on an evidentiary error unless the error affected the substantial rights of the party seeking relief.  An error affects a party's substantial rights if there is a "reasonable possibility" that the error contributed to the outcome of the proceedings.  ***Weborg v. Jenny***, 2012 WI 67, ¶68, 341 Wis. 2d 668, 816 N.W.2d 191.  In other words, the error is harmless if the beneficiary of the error demonstrates beyond a reasonable doubt that the error did not contribute to the verdict.  ***State v. Harris***, 2008 WI 15, ¶42, 307 Wis. 2d 555, 745 N.W.2d 397.  Whether an error was harmless is a question of law that this court reviews de novo.  ***Weborg***, 341 Wis. 2d 668, ¶43.

*A. Winterscheidt's testimony about Clauer witnessing the transaction*

¶31    Although Barnes successfully moved to exclude Clauer's testimony as a discovery sanction, the fact that Clauer witnessed the drug transaction nonetheless made it into evidence.  The defense attacked the quality of the police investigation during Winterscheidt's cross-examination, including by eliciting testimony suggesting that none of the officers testifying at trial had personally witnessed the transaction.  In response, and over Barnes' hearsay objection, the State elicited, on redirect examination, Winterscheidt's testimony that Clauer had witnessed the transaction and had radioed to the other officers that the "deal was done."

¶32    On appeal, Barnes first argues that testimony was hearsay and was therefore erroneously admitted.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  WIS. STAT. § 908.01(3).  The State argues Winterscheidt's testimony was not hearsay, and we agree.

¶33    At trial, the State argued it was offering Winterscheidt's testimony about what Clauer had seen to show Winterscheidt's state of mind and what he had done after he was told the transaction had occurred.  "Where a declarant's statement is offered for the fact that it was said, rather than for the truth of its content, it is not hearsay." *State v. Wilson*, 160 Wis. 2d 774, 779, 467 N.W.2d 130 (Ct. App. 1991).  The testimony had the convenient effect for the State of rebutting some of Barnes' attempts to impugn the quality of the investigation.  But the circuit court could reasonably conclude that the testimony was not being offered to show that Clauer had, in fact, observed the transaction but, rather, to show why he had taken subsequent investigative steps.  *See State v. Hanson*, 2019

WI 63, ¶25, 387 Wis. 2d 233, 928 N.W.2d 607, *cert. denied*, 140 S. Ct. 407 (2019) ("The question is not whether the evidence might be inadmissible hearsay if it is offered to prove the truth of the matter asserted; rather, the question is whether the evidence is offered for a legitimate reason other than for the truth of the matter asserted.").

¶34 Barnes argues we should adopt the multifactor approach to "background" evidence discussed in *United States v. Reyes*, 18 F.3d 65, 70-71 (2d Cir. 1994). We decline to mandate that circuit courts exercise their discretion in a particular manner on such issues. In any event, two of the factors *Reyes* discusses concerning the admissibility of "background" evidence are whether the defendant "opens the door" to such evidence and whether a jury instruction can cure any potential prejudice arising from the testimony. *Id.* As explained, here Barnes opened the door to Winterscheidt's testimony by attacking the quality of the police investigation on cross-examination, including specifically their failure to observe the transaction.[5] Moreover, the circuit court offered to provide a jury instruction regarding the purpose of the testimony; Barnes did not request one.

¶35 Second, Barnes argues that Winterscheidt's testimony violated his right to confront witnesses against him under both the United States and

---

[5] Barnes contends he did not open the door because he attacked only law enforcement's failure to video record or photograph the transaction, not its failure to observe it. This assertion parses the nature of Winterscheidt's cross-examination too thin, as it was clear Barnes was presenting a narrative that the police failed generally to keep track of the controlled buy. Accordingly, the circuit court could reasonably conclude that Barnes opened the door with that argument and line of inquiry.

Wisconsin constitutions.[6] *See State v. Nieves*, 2017 WI 69, ¶18, 376 Wis. 2d 300, 897 N.W.2d 363. But the right to confrontation does not extend to testimonial statements offered for purposes other than establishing the truth of the matter asserted. *Hanson*, 387 Wis. 2d 233, ¶19 (citing *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)). And Barnes' right-of-confrontation argument is tied to his evidentiary assertions; he does not argue that his right to confront witnesses was nonetheless violated if Clauer's statement was properly admitted into evidence. Accordingly, our determination regarding Barnes' hearsay challenge also resolves his confrontation argument.[7]

### B. *Barnes' statements during one of the recorded telephone calls*

¶36 Next, Barnes argues the circuit court erred by permitting testimony at trial regarding one of four recorded telephone calls between Barnes and Marciniak prior to the transaction. The recording and transcript of the call at issue, unlike those of the other three calls, did not contain any statements from Barnes because investigators had plugged a jack into the wrong port on the recording equipment and captured only Marciniak's side of the conversation.

---

[6] Whether a defendant's right to confrontation was violated is a question of constitutional law that we decide de novo. *State v. Hanson*, 2019 WI 63, ¶16, 387 Wis. 2d 233, 928 N.W.2d 607, *cert. denied*, 140 S. Ct. 407 (2019). We generally apply United States Supreme Court precedents when interpreting the Sixth Amendment and analogous provisions under the Wisconsin Constitution. *Id.*, ¶16.

[7] In his reply brief, Barnes appears to concede that most of the foregoing analysis is correct. Barnes' reply brief instead limits itself to arguing that only Winterscheidt's identification of Clauer as the officer who saw the transaction was admitted in error. We fail to perceive what difference Winterscheidt's naming of a specific officer could have made. Put another way, if Barnes concedes that Winterscheidt could properly testify that another officer notified him that the transaction was complete, the additional information of that specific officer's name is immaterial—the definition of harmless error. Moreover, the mere naming of the specific officer who claimed to have witnessed the transaction did not transform the testimony into a hearsay statement for purposes of the Confrontation Clause.

However, investigators could still hear the conversation between Barnes and Marciniak during that call, and they testified about it at trial. As even Barnes points out, Barnes and Marciniak clearly discussed a drug transaction during the call.

¶37 Barnes argues that, in response to a pretrial motion, the circuit court "exclud[ed] this recording and statements purportedly made during that call." Barnes asserts the court erred by denying his postconviction motion because, "[d]espite this clear order, at trial the State proceeded to present the recording of call 3, the transcript of call 3, and testimony claiming Barnes supposedly made incriminating statements during that call." In response to Barnes' postconviction motion, the court concluded that its pretrial ruling did not forbid any testimony about the call but, rather, merely rejected the State's assertion that it was entitled to admit, under WIS. STAT. § 908.01, the statements Barnes made, as reflected on the recording and transcript.

¶38 We agree with the circuit court that Barnes misapprehends the nature of the pretrial order in arguing that it functioned as an exclusionary ruling prohibiting any reference to the phone call. The State filed a pretrial motion specifically seeking to admit Barnes' statements to Marciniak during the calls as statements by a party opponent under WIS. STAT. § 908.01(4)(b)1. A few days later, at the hearing on the motion and after addressing other matters, the court stated, "That leaves us to the witnesses, the statements of the defendant to the two witnesses, Mr. Marciniak and [Bobbi Reed]." Barnes' counsel objected to Reed's testimony on the basis that it was "not statements of my client," and he also objected to the transcript of the phone call at issue as irrelevant because it contained only "unintelligible" statements by Barnes.

17

¶39    In response, the prosecutor conceded there were no statements by Barnes in the transcript of the call due to the recording error. As a result, the circuit court accepted the defense argument that, "[f]or this proceeding," the transcript was "not relevant" because there was no statement by Barnes to admit. The order subsequently entered concerned only the admissibility of three specific statements Barnes made during the other three phone calls, as well as the transcripts of those calls. Contrary to Barnes' assertions, the pretrial order did not prohibit reference to the call involving the recording error at trial, including the officers' descriptions of what was said during those calls. Likewise, the order did not prohibit the State from introducing the recording or the transcript at trial.

¶40    In any event, any error in admitting the evidence was harmless. Barnes challenges the admissibility of the recording and the transcript of the call that lacked any statements from him due to the recording error. But he does not challenge the testimony in which Marciniak stated that, during the call, he and Barnes discussed "[h]ow many ounces that [Barnes] was going to bring." Because the challenged evidence was duplicative of Marciniak's testimony, we cannot conclude there was a reasonable possibility that the recording and transcript contributed to the outcome of the trial.

¶41    Barnes does challenge the testimony of two officers who were listening to the phone call at issue. But those officers' testimony is ambiguous as to who was delivering drugs to whom.[8] Accordingly, their testimony was not

_____

[8] One officer testified that during the relevant call, Barnes called Marciniak "and they were talking about the quantity of methamphetamine that was expected to be delivered." Similarly, another officer testified that during the call, "the amount of methamphetamine was changed from three ounces to four ounces."

18

inconsistent with Barnes' theory of defense, which was that it was Marciniak who was the drug dealer—not that a drug transaction had not occurred. As explained above, Marciniak's testimony specifically identifying Barnes as the dealer was far more damning than anything the officers testified to regarding the contents of the phone call involving the recording issue. Accordingly, we cannot conclude there is a reasonable possibility that the officers' testimony in this regard contributed to the outcome.

*C. Officer testimony identifying Barnes' voice*

¶42 Next, Barnes argues the officers lacked the necessary foundation to identify Barnes' voice on the recorded calls. He argues that one of the officers who testified about the content of the call with the recording issue had no basis to identify Barnes as a participant in that phone call. He also argues that Winterscheidt lacked any basis to testify that he could tell it was Barnes who participated in the phone calls with Marciniak.

¶43 Even assuming it was error to admit this testimony, we conclude the error was harmless. As explained above, Marciniak testified that he was speaking to Barnes during the phone calls. Barnes does not argue Marciniak lacked a basis to identify his voice. Because the officers' testimony was merely duplicative of Marciniak's, we cannot conclude there is a reasonable possibility that the officers' identification of Barnes' voice on the recordings contributed to the verdict. Moreover, the evidence as a whole—most notably, the fact that the buy money police had provided to Marciniak was found in the center console of Barnes' vehicle—supports our conclusion that, in the context of the trial, the officer identification was of insignificant value.

### D. Winterscheidt's testimony about searching Marciniak's vehicle

¶44   At trial, Winterscheidt testified that after Barnes and Marciniak spoke during the various phone calls, officers searched Marciniak and his vehicle for any contraband or currency. Later, Winterscheidt described the purpose of such searches and what they entailed. After some additional testimony about the thoroughness of the vehicle search, Winterscheidt testified, "A thorough search was done. I didn't do it personally."

¶45   At this point, Barnes interposed an objection to the foundation for the question and moved to strike the answer. The circuit court overruled the objection, reasoning that the question had already been asked and answered. We conclude this was a reasonable approach, as there had already been significant unchallenged testimony regarding the vehicle search. Accordingly, the court did not erroneously exercise its discretion in overruling the objection. And, as with the issue regarding the officers identifying Barnes' voice, in the context of the entire body of evidence, any error arising from Winterscheidt's testimony about the adequacy of the search of Marciniak's vehicle was harmless.

### E. The exclusion of rebuttal witness Gerald Clark

¶46   On the final day of trial, the defense sought to introduce the testimony of Gerald Clark, who had not been named on any witness lists. The defense stated Clark was intended as a rebuttal witness to counter Marciniak's testimony that, after the methamphetamine purchase, he went directly from the site of the transaction to the motel where he was staying. The defense made an offer of proof that Clark would testify that he was a friend of Marciniak's, that on the date in question he saw Marciniak pick up a box from a house or a garage, and that

Marciniak had made statements to Clark later that day about "set[ting] somebody up."

¶47 The circuit court excluded Clark's testimony. It concluded that "[n]inety percent" of what Barnes wanted Clark to testify about was not rebuttal testimony but, rather, evidence that belonged as part of Barnes' case-in-chief. In other words, the court determined that the vast majority of Clark's testimony was beyond the scope of rebuttal. Barnes does not challenge this determination, but he merely argues that the court should have permitted Clark to offer what little rebuttal testimony he could—namely, that Marciniak had not gone directly to the motel following the transaction, as he claimed to have done.

¶48 Again, we conclude the circuit court did not erroneously exercise its discretion when it prohibited Clark from testifying. The court stated it was not going to spend the time necessary to "parse" which portions of Clark's testimony Barnes should have introduced as part of his case-in-chief. The court clearly regarded Clark's purpose as providing the jury with an alternative theory of where Marciniak had gotten the methamphetamine later found in his possession after the controlled buy—an issue that should have been raised in Barnes' case-in-chief.

¶49 As Barnes notes on appeal, his attorney subsequently expressed a willingness to "tailor the questions I would ask Mr. Clark to just the issue discussed in chambers which is whether or not Mr. Marciniak went directly [from] the Temple Bar to the motel" after the transaction. The circuit court declined to revisit that issue, stating the effort was "too little, too late." The court expressed dismay that the parties had already extended what was supposed to have been a one-day trial into a second day, with the possibility of a third day looming. Again, we perceive a reasonable basis for the court to reject Clark's testimony under these

21

circumstances, where only a small portion could be properly considered rebuttal testimony. Witnesses that were not rebuttal or impeachment witnesses were required to be disclosed by the defense under WIS. STAT. § 971.23(2m)(a).[9]

*IV. Ineffective Assistance of Counsel*

¶50 Next, Barnes argues that although he believes his attorney's objections were sufficient to preserve issues for appellate review, to the extent we determine those objections were not sufficient and issues were forfeited, his trial attorney rendered constitutionally ineffective assistance. We have not applied any kind of forfeiture rule to Barnes' arguments pertaining to wire recording issues, to his mistrial request arising from the in limine order, or to any of the evidentiary issues Barnes raises. Accordingly, we perceive no basis to conclude trial counsel performed deficiently by failing to preserve issues for direct review.[10]

¶51 At most, we have identified a few instances in which Barnes' trial counsel could have taken a different course of action, such as by interposing an

_____

[9] Even on appeal, Barnes fails to appreciate the circuit court's reasoning. Despite acknowledging that much of Clark's anticipated testimony fell outside the scope of rebuttal, Barnes nonetheless claims that his "rebuttal" testimony "could have provided an alternative source for Marciniak to obtain the box of meth—from a nearby garage, as Clark observed." The court's point was that this alternative theory was not proper rebuttal testimony but, rather, testimony to which the State should have been properly noticed. The State did not ask Marciniak about Clark's account during its direct examination, nor is there any indication that the box Clark would have testified about was similar to the box containing the methamphetamine that police recovered from Marciniak's possession after the transaction—even assuming Clark would have credibly testified that Marciniak had picked up something from a garage before heading to the motel.

[10] Whether a person has been deprived of his or her constitutional right to the effective assistance of counsel presents a mixed question of law and fact. *State v. Hunt*, 2014 WI 102, ¶22, 360 Wis. 2d 576, 851 N.W.2d 434. Under that standard, we will uphold a circuit court's findings of fact unless they are clearly erroneous but we independently decide whether counsel performed deficiently in a manner that prejudiced the defendant. *Id.*

objection earlier during Winterscheidt's testimony about the vehicle search, requesting a jury instruction regarding Marciniak's allusions to prior drug transactions with Barnes, or providing proper notice to the State about the intent to call Clark as a witness to support the defense's alternative theory. We question whether these instances constitute deficient performance under the applicable standard. We indulge in a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hunt*, 2014 WI 102, ¶39, 360 Wis. 2d 576, 851 N.W.2d 434. We will not conclude a trial attorney performed deficiently unless, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Barnes' brief generally restates his substantive arguments without separately considering whether his trial counsel acted within these norms, and his assertions of deficient performance are largely conclusory.

¶52 In any event, we are satisfied that none of the potential claims of error caused Barnes prejudice. A counsel's deficient performance is prejudicial only if the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*, ¶40. The defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Sholar*, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89. None of the potential errors here, whether considered individually or collectively, are sufficient to meet this standard. *See State v. Myren*, 133 Wis. 2d 430, 441, 395 N.W.2d 818 (Ct. App. 1986) (noting that the harmless error analysis is substantively the same as the test for prejudice in the ineffective assistance of counsel context).

## V. Reversal in the Interests of Justice

¶53    Barnes also requests that we exercise our power of discretionary reversal given the "combined effect of the discovery violations, perjured testimony, and evidentiary errors." This court has the statutory power to reverse a judgment "if it appears from the record that the real controversy has not been fully tried, or [if] it is probable that justice has for any reason miscarried." WIS. STAT. § 752.35. We exercise our discretionary reversal authority "infrequently and judiciously," and only in "exceptional cases." *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citations omitted).

¶54    Here, Barnes asserts that the various alleged errors resulted in the real controversy—the identity of the person who delivered methamphetamine—not being fully tried. We generally conclude the real controversy has not been fully tried in two situations: "(1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue" that the issue was not fully vetted at trial. *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). Barnes appears to argue the latter was true here, asserting the "central dispute" in this case was "repeatedly clouded by improper propensity evidence, false testimony by law enforcement, foundationless testimony trying to plug holes in the State's case, and attempts to back-door hearsay testimony regarding the ultimate fact in the case in order to get around the State's blatant discovery violations."

¶55    We have addressed all of these claims of error and rejected them on their merits. The State was sanctioned for its discovery violations by excluding witnesses, the other acts evidence was de minimis (and largely inferable in any

24

event by Marciniak's conduct in setting up the controlled buy), and what few evidentiary issues arguably occurred were not likely to have made a difference in the context of the entire trial. In sum, we are satisfied that the real controversy was sufficiently before the jury.

¶56 In so holding, we do not ignore that law enforcement clearly made mistakes in the conduct of the investigation. However, these matters were exposed at trial by Barnes' counsel, who repeatedly and forcefully emphasized areas of the investigation that were deficient. Additionally, he impugned the credibility of the State's lead investigator by exposing Winterscheidt's initial testimony regarding the content of the wire recording as being false. Again, Barnes did not contend that no transaction occurred but, rather, that Marciniak was the seller and not the buyer—but this defense notably failed to account for the fact that the buy funds were located in Barnes' possession. Our review of the trial record confirms that the evidence before the jury was a proper basis upon which it could ascertain whether Barnes was guilty of delivering methamphetamine to Marciniak. As such, this is not a case in which the exercise of our discretionary reversal authority is warranted.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.